# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br><br>     vs.<br><br>JUSTIN LASLEY, SR.,<br><br>                   Defendant. | 8:15CR260<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Findings and Recommendation (Filing No. 24), issued by Magistrate Judge F.A. Gossett recommending that the Motion to Suppress filed by the Defendant Justin Lasley, Sr. ("Defendant") (Filing No. 15), be denied. Defendant filed Objections to the Findings and Recommendation (Filing No. 28) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a). The Government responded (Filing No. 30) to the Objections. For the reasons set forth below, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

## BACKGROUND

Defendant is charged with domestic assault by an habitual offender in violation of 18 U.S.C. § 117. Defendant moves to suppress all evidence obtained by law enforcement as a result of an interview between Defendant and FBI Special Agent Jeff Howard ("Howard") that took place on August 11, 2015, at the county jail in Macy, Nebraska.

Defendant was arrested on July 29, 2015 for, among other things, allegedly assaulting Carolyn Seymour. (Tr. at 5:17 and 28:3-4.) The following day, Defendant

admitted in tribal court to violating the terms of tribal-court probation and was sentenced to 90 days in jail. (G.E. 3.[1]) Howard was assigned to investigate the alleged assault of Carolyn Seymour. Howard prepared himself to interrogate Defendant by running Defendant's criminal record on August 4, 2015; looking over Defendant's prior domestic-violence conviction; and researching Defendant's children and ex-girlfriends.

On August 11, 2015, Special Agent Howard came to the Macy jail to question Defendant about the alleged assault. (*See* Tr. at 15:23 - 17:14.) When Howard arrived, he was informed that the Defendant wanted to speak with him. (Tr. 21:14-17.) The interview took place in an auxiliary room, not part of the larger jail unit. The room was used for work-release prisoners and contained a picnic table and television. (Tr. 7:19-25.) Howard and Defendant sat across from each other at the picnic table, and the door to the room was closed. (Tr. 8: 4-9.) Howard testified that the door was closed for privacy and to keep out noise from other parts of the jail. (Tr. 8:17-21.) Howard was not armed during the interview, and Defendant was not in restraints. (Tr. 8:12-16.)

From the outset, Howard told Defendant that he was in custody. (G.E. 1; Tr. at 22:22-24.) Howard identified himself by saying "Hey Justin, I'm Jeff, from the FBI." (G.E. 1 at 0:09.) The Defendant verbally acknowledged the identification. (G.E. 1 at 0:10.) Agent Howard continued, saying "[y]ou're in custody, so I'm going to let you know that you don't have to talk to me. If I ask a question you don't want to answer, you don't have to." (G.E. 1 at 0:12-0:18.) Howard stated, "You're entitled to an attorney. I'm not here to arrest you. I mean, you're already in custody. I just don't have one of those

---

[1] The abbreviation "G.E." refers the Government's Exhibits admitted at the evidentiary hearing before Judge Gossett on October 21, 2015.

2

forms right now. I heard you wanted to talk to me?" (G.E. 1 at 0:18-0:24.) The Defendant inquired "for what?" to which Howard responded "I don't know. They said you were asking whether the Feds were going to come talk to you." (G.E. 1 at 0:24-0:30.) The Defendant then stated "You're with the FBI? Yeah. I was wondering what was going on." (G.E. 1 at 0:30-0:34.) When asked why he was currently incarcerated in the Macy jail, the Defendant stated he "had 90 days suspended for a year and with getting caught drunk, it was a violation of probation here, so [he was] doing 90 days left for that." (G.E. 1 at 2:49-3:01.) The Defendant made statements concerning the paternity of his unborn child with his current dating partner, along with statements involving prior domestic violence incidences. The interview lasted just over fourteen minutes.

A suppression hearing was held on October 21, 2015, before Magistrate Judge Gossett who found Howard's testimony to be credible. (Tr. at 41:16-18.) Judge Gossett also found that the Defendant asked to speak to someone from the FBI; the interview was conducted in a relatively small, but comfortably sized room; and there was no coercion, threat, promise, or inducement, and in fact none could have been given. (Tr. at 44:17-23.) Only Howard testified at the suppression hearing. Judge Gossett recommended that the motion to suppress be denied in its entirety. (Tr. at 45:2-4.)

**STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendants have objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendation. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

3

## DISCUSSION

Defendant argues that evidence and statements obtained from Howard's interview with Defendant on August 11, 2015, must be suppressed because Howard interviewed Defendant in custody without administering a complete a *Miranda* warning. The Supreme Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way." *Oregon v. Mathiason*, 429 U.S. 492, 494, 97 S. Ct. 711, 713 (1977). Judge Gossett concluded, after considering the factors set forth in *Howes v. Fields*, 132 S.Ct. 1181, 1189 (2012), that the interview did not require *Miranda* warnings.

In *Howes v. Fields*, the Supreme Court rejected the Sixth Circuit's categorical rule that "the questioning of a prisoner is always custodial when the prisoner is removed from the general prison population and questioned about events that occurred outside the prison." *Id.* at 1187. The Court noted that its decisions did not support such a rule, and clarified that restraint on freedom of movement is not alone determinative of custody. *Id.* The Court explained that under these circumstances, the environment must "present . . . the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.* at 1189–90. The Court cited three reasons for concluding that imprisonment is not inherently custodial under *Miranda*. First, there is no "shock" from the possibility of arrest that generally arises during police station interrogations because the prisoner is already incarcerated. *Id.* at 1190. "[W]hen a person who is already serving a term of imprisonment is questioned, there is usually no such change [in circumstances]." *Id.* at 1190–91. Second, a person who is already

4

incarcerated is unlikely to be "lured into speaking by a longing for prompt release." *Id.* Third, "a prisoner, unlike a person who has not been convicted and sentenced, knows that the law enforcement officers who question him probably lack the authority to affect the duration of his sentence." *Id.* at 1191.

To determine whether questioning is custodial, the Supreme Court directed courts to focus on all of the circumstances of the interrogation. *Id.* at 1192. The Court concluded that the habeas petitioner in *Howes v. Fields* was not in custody for purposes of *Miranda*. The Court recognized that several facts suggested a coercive atmosphere. For example, the Court noted that the petitioner did not invite the interview or consent to it in advance; the petitioner was not advised that he was free to decline to speak with the deputies; the interview lasted five to seven hours and continued well past the petitioner's normal bedtime; the deputies who questioned the petitioner were armed; and one of the deputies used a very sharp tone and profanity on one occasion. *Id.* at 1192–93. However, the deputies told the petitioner at the outset of the interrogation that he could leave and return to his cell whenever he wanted; the petitioner was not physically restrained or threatened; the petitioner was interviewed in a well-lit, average-sized conference room where he was not uncomfortable and was offered food and water; and the door to the room was open at times. The Court concluded that these facts demonstrated an environment in which a reasonable person would have felt free to terminate the interrogation and leave. *Id.* at 1193. Thus, under these circumstances, "especially the undisputed fact that [the petitioner] was told that he was free to end the questioning and to return to his cell," indicated that the petitioner was not in custody for purposes of *Miranda*. *Id.* at 1194.

The circumstances surrounding Howard's interview with Defendant likewise indicate that Defendant was not in custody for purposes of *Miranda*. Defendant was questioned about a different crime than his probation violation—the reason for Defendant's incarceration. Defendant was not in restraints and he was interviewed in a relatively comfortable room. Howard told Defendant that Howard was not at the jail to arrest Defendant and was under the impression that Defendant wanted to speak to Howard. (G.E. 1 at 0:18-0:24.) Although Howard was investigating Defendant at the time of the interview, Howard was not deceptive or misleading. Howard testified that he did not even know Defendant was in the Macy jail when Howard arrived in Macy. Significantly, Howard advised Defendant that Defendant was not required to speak with Howard. Howard stated, "I'm going to let you know that you don't have to talk to me. If I ask a question you don't want to answer, you don't have to." (G.E. 1 at 0:12-0:18.) Each of these facts suggest that Howard's interview with Defendant was not custodial.

The factual differences between this case and *Howes v. Fields* also suggest that Defendant was not in custody for purposes of *Miranda*. Unlike the interview in Fields, which lasted as long as seven hours, the interview between Howard and Defendant lasted just over fourteen minutes, between approximately 4:45 and 5:00 p.m. Further, unlike the deputies in *Howes v. Fields*, Howard was unarmed during the interview. These facts further support Judge Gossett's finding that Defendant was not in custody for *Miranda* purposes.

The Court recognizes that unlike the room in *Howes v. Fields*, the door in this case was closed during the interview. Further, there is no evidence that Howard expressly told the Defendant what to do if he wanted to terminate the interview and

return to his cell. Nevertheless, no facts suggest coercion on the part of Howard. Throughout the interview, Agent Howard's voice remained calm and conversational. Defendant's demeanor also appeared cooperative and calm. Much of the interview, in fact, was spent answering Defendant's questions directed to Howard. The evidence supports Judge Gossett's conclusion that the interview was not unduly coercive. Accordingly, considering the totality of the circumstances and the considerations set forth in *Howes v. Fields*, the Court concludes that Defendant was not in custody for *Miranda* purposes.

## CONCLUSION

For the reasons discussed, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

IT IS ORDERED:

1. The Findings and Recommendation (Filing No. 24) are adopted;

2. The Motion to Suppress filed by the Defendant Justin Lasley, Sr. (Filing No. 15) is denied; and

3. The Defendant's Objection to the Findings and Recommendation (Filing No. 28) is overruled.

Dated this 18th day of December, 2015.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge